# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JAMES E. BOSTIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:18-cv-00562** |
| | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | **JUDGE CAMPBELL** |
| **CORRECTIONS,** *et al.,* | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Plaintiff James E. Bostic, an inmate of the Bledsoe County Correctional Complex in Pikeville, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the Tennessee Department of Corrections (TDOC); TDOC Warden f/n/u Settles; TDOC Commissioner Tony Parker; Contracting Nurse f/n/u Darrius; Contracting Nurse f/n/u Auston; BCCX Prison Facility; BCCX Sergeant Jay Yearwood; Patricia Aldridge; Tashonda Burton; City of Nashville; and Dr. f/n/u Dillion, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1). Plaintiff also filed an application to proceed in forma pauperis. (Doc. No. 2).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I.     Three Strikes Analysis

Before the Court can screen the complaint pursuant to the PLRA, the Court must determine whether Plaintiff will be permitted to seek pauper status in this action, given his previous litigation history in federal court. The PLRA was enacted to implement "constraints designed to prevent sportive filings in federal court," *Skinner v. Switzer*, 562 U.S. 521, 535 (2011), and provides the following under Section 1915(g) with respect to prisoner-plaintiffs:

1

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In other words, a prisoner-plaintiff who falls within the scope of Section 1915(g) because of three or more previous "strikes" must pay the entire filing fee at the outset of the case, unless he or she is under imminent danger of serious physical injury. *Wilson v. Yaklich*, 148 F.3d 596, 603-04 (6th Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999).

Plaintiff is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g) because he has, on at least three prior occasions, filed a civil action or an appeal that has been dismissed for failure to state a claim upon which relief could be granted. [1]

To fall within the statutory exception to the "three-strikes" rule, a prisoner must allege that the threat or prison condition is "real and proximate" and that the danger of serious physical injury exists at the time the complaint is filed. *See Rittner v. Kinder*, 290 Fed. Appx. 796, 797-98 (6th Cir. 2008) (citation omitted). A prisoner's assertion that he faced danger in the past is insufficient to invoke the exception. *Id.* Therefore, pursuant to Section 1915(g) of the PLRA, Plaintiff may pursue the instant action as a pauper only if he is under imminent danger of serious physical injury.

---

[1] *See Bostic v. Corrs. Corp. of Am., et al.*, Civil Action No. 3:06-0041 (M.D. Tenn.) (dismissed for failure to state a claim on 1/19/06), *aff'd on appeal*, No. 06-5249 (6th Cir. 10/12/06); *Bostic v. Metro. Public Defender's Office, et al.*, Civil Action No. 3:05-0455 (M.D. Tenn.) (dismissed for failure to state a claim on 6/9/05); *Bostic v. Metro. Public Defender's Office, et al.*, Civil Action No. 3:05-1014 (M.D. Tenn.) (dismissed as frivolous on 11/30/05).

The Court notes that, in his complaint, Plaintiff represents that he has not filed "any other lawsuits in the United States District Court for Tennessee or in any other state or federal court." (Doc. No. 1 at 1). It is unclear whether Plaintiff mistakenly checked the wrong box; however, Plaintiff is advised that "[a] district court can impose sanctions if a party knowingly files a pleading containing false contentions." *Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006) (per curiam); *Gabriella-Valenzuela v. Corizon Health Headquarters*, No. 3:18-cv-00432 (M.D. Tenn. filed 5/7/2018) (Doc. No. 5 at 3).

The complaint alleges that Plaintiff suffers from chronic obstructive pulmonary disease (COPD), lung disease, asthma, hypertension, epilepsy, nerve pain in his feet, and an unspecified eye problem. The complaint further alleges that, since Plaintiff's arrival to the Bledsoe County Correctional Complex on November 18, 2016, Defendants have not provided Plaintiff with medication for these conditions and refuse to give him access to any medical treatment for these conditions. (Doc. No. 1 at 8-9). For example, Plaintiff alleges that he should be receiving breathing treatments, but Defendants have refused to provide them. (*Id*. at 8).

On April 6, 2018, Plaintiff requested a "sick call" and was seen by Defendant nurse Darrius. Darrius told Plaintiff that she was not going to check his blood pressure or weight and was going to discontinue Plaintiff's "chronic care" because Plaintiff had made a "false report for blood pressure medication . . . ." (*Id*. at 11). Dr. Dillion then discontinued Plaintiff's blood pressure medication without Plaintiff's knowledge or consent, alleging that Plaintiff had refused his blood pressure medication. (*Id*. at 15). Plaintiff denies that he has ever refused his blood pressure medication and believes that Darrius and other medical staff personnel lied to Dr. Dillion. (*Id*.)

Plaintiff states that he "stops breathing in [his] sleep because of [his] COPD condition. This is serious." (*Id*. at 9). Plaintiff also states that he is in pain. (*Id*. at 12-13). He further states that he has blood in his stool, "which could be colorectal cancer, or colon cancer" and Defendants have "misdiagnosed" him with hemorrhoids. (*Id*. at 15). On April 6, 2018, Plaintiff filed a grievance raising his concerns about his medical treatment but he has not received a response. (*Id*. at 18).

The imminent-danger exception is a pleading requirement subject to the ordinary principles of notice pleading. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). Under this standard, the plaintiff must "allege[ ] facts from which a court, informed by its judicial

experience and common sense, could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." *Id.* (internal quotation marks and citation omitted). To support a finding of sufficiently imminent danger, "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Id.* (citing *Rittner v. Kinder*, 290 Fed. Appx. 796, 797 (6th Cir. 2008)). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* (citations omitted). In an unpublished opinion, the Sixth Circuit has held that "[f]ailure to receive adequate treatment for potentially life-threatening illnesses . . . clearly constitutes 'imminent danger' under the [PLRA]." *Vandiver v. Vasbinder*, 416 Fed.Appx. 560, 562–63 (6th Cir. 2011) (citing *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (holding that "failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger'")). In a later, published opinion in a case filed by the same plaintiff, the Court reaffirmed that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g)." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013). The Sixth Circuit explained:

> [A] plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g), as incremental harm that culminates in a serious physical injury may present a danger equal to harm that results from an injury that occurs all at once. We reject the notion that the inclusion of the word "imminent" in § 1915(g) allows us to grant IFP status only after a plaintiff's condition has deteriorated such that the next instance of maltreatment would result in a serious physical injury. Imposing such a restriction would ignore the progressive and worsening nature of injuries often associated with chronic illness and would result in unnecessary suffering by those afflicted with these conditions. We thus believe that for the purposes of § 1915(g), an individual afflicted with a chronic illness that left untreated would result in serious injury faces imminent danger when the illness is left untreated.

*Id.* at 587.

Some courts have rejected a requirement that the district courts scrutinize the seriousness of the continuing injury before granting a three-striker leave to proceed in forma pauperis. For example, in *Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003), the plaintiff alleged imminent danger resulting from the defendants' wrongful discontinuation of his medication for attention deficit hyperactivity disorder and panic disorder. The court rejected the defendant's assertion that the plaintiff's claims were "not serious enough," stating:

> [Section] 1915(g) is not a vehicle for determining the merits of a claim. To follow the [defendant's] logic, a district court would not just need to determine whether a prisoner is alleging some type of ongoing or imminent harm. It would also need to fine-tune what is "serious enough" to qualify for the exception. Is being denied heart medication? What about a cholesterol-lowering drug? How frequently do beatings need to occur before they are serious? This would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. This is not required, and so we find that the district court erred in concluding that [the plaintiff's] complaint didn't meet the imminent danger exception.

*Id.* at 331. *Accord Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) ("[A]lthough the feared physical injury must be 'serious,' 'we should not make an overly detailed inquiry into whether the allegations qualify for the exception,' because § 1915(g) 'concerns only a threshold procedural question'. . . ." (quoting *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007))).

In a civil rights action filed in the Northern District of Florida, the prisoner-plaintiff had accrued at least three strikes under the PLRA and alleged that should be allowed to proceed in forma pauperis because, among other ailments, he suffered from COPD and bronchitis and, during his five-year incarceration, he had not been provided adequate medical treatment for his conditions. *Stearnsmiller v. Florida*, No. 5:09cv215/RS-EMT, 2009 WL 5067668, at *1 (N.D. Fla. Dec. 17, 2009). The court rejected the plaintiff's argument, noting that, "with regard to

Plaintiff's respiratory issues, he acknowledges in one of his filings that he received 'respiratory therapy' when he was previously housed at the Reception Medical Center, which suggests that treatment for his respiratory condition is available and has been previously provided to him at that institution." *Id*. at *6 n.2.

Although the present case presents a close call, the Court finds that Plaintiff's contention that Defendants have refused <u>any</u> medical treatment or medication for his chronic medical conditions (specifically, COPD) adequately alleges facts supporting an inference that Plaintiff is in imminent danger of serious physical injury for purposes of the threshold inquiry required by 28 U.S.C. § 1915(g). Unlike the *Stearnsmiller* plaintiff, Plaintiff alleges that he has been denied any treatment at all for his COPD for a two-year period, including a recent breathing treatment. *Cf. Jones v. Clement,* No. 3:16-cv-257-PLR-CCS (E.D. Tenn. Feb. 22, 2017) (finding that plaintiff had "sufficiently alleged that he faced imminent danger of serious physical injury" due to allegations that prison doctors failed to adequately treat him for pain related to his Crohn's disease, a chronic illness); *Patterson v. Corrs. Corp. of Am.*, No. 1:16-cv-0005, 2016 WL 540710, at *3 (M.D. Tenn. Feb. 11, 2016) (Sharp, J.) (holding that plaintiff's allegation that defendants failed to provide any medical treatment for inmate's diagnosed broken toe and that inmate has continuing severe pain and numbness in his toe as well as continuing leg and back pain supports an inference that plaintiff is in imminent danger of serious physical injury); *Freeman v. Collins*, No. 2:08-cv-71, 2011 WL 1397594, at *6 (S.D. Ohio April 12, 2011) (holding that the failure to treat allegedly severe chronic pain may satisfy the imminent danger requirement under specific circumstances); *Perez v. Sullivan*, 2005 WL 3434395, at *2 (W.D. Wis. Dec. 13, 2005) (same); *but cf. Cruse v. Corr. Med. Assocs.*, 1:16CV68-LG-RHW, 2016 WL 7477554, at *2 (S.D. Miss. Dec. 29, 2016) (finding that prisoner with COPD had not alleged imminent danger of serious physical injury

where prisoner alleged he was being "overmedicated with Ibruprofen" but simply disagreed with the course of his treatment; prisoner also alleged the jail where he was housed was "unsafe" because "the ceiling is embedded with black mold in which [sic] is very dangerous to Plaintiff because [of] his chronic C.O.P.D. disease" but court found "there is nothing in the record which shows that the exacerbation [of his COPD] was related to mold or other alleged conditions at the jail."). Therefore, the Court determines that Plaintiff qualifies for the imminent danger exception to the three strikes rule and will be permitted to seek pauperis status in this action.

## II.      Letters to the Court

After he filed his complaint, Plaintiff mailed three letters to the Court. (Doc. Nos. 5, 6, 8). The third letter (Doc. No. 8) provides additional context for the claims raised in the original complaint. No new defendants or claims are added.

The first and second letters detail allegations not contained in the original complaint. In the first letter, Plaintiff alleges that certain individuals began retaliating against Plaintiff after he filed this action. (Doc. No. 5). According to Plaintiff, these individuals are intentionally blocking his efforts to be transferred to "the annex." (*Id*. at 2). In the second letter, Plaintiff alleges that he is not being given all the pre-trial jails credit to which he is entitled. (Doc. No. 6). The Court construes the first and second letters as motions to amend the complaint.

Rule 15(a) (2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99.

With regard to Plaintiff's proposed retaliation claims, filing a federal lawsuit is protected conduct under the First Amendment. Plaintiff alleges in his first motion to amend that certain individuals retaliated against him after he filed this action by refusing to transfer him to the annex. However, in the original complaint, Plaintiff alleges that he is eligible for transfer to the annex but his attempts to be transferred have been ignored, denial, or thwarted by counselor and guards. (Doc. No. 1 at 21). In other words, Plaintiff already was claiming that certain individuals were blocking his efforts to be transferred to the annex *prior to* filing this action. Thus, Plaintiff cannot establish that the proposed defendants' conduct was substantially motivated at least in part by retaliation for Plaintiff filing this action because these and other individuals were engaging in the same conduct before Plaintiff initiated this action. *See id*. at 394-99. Because Plaintiff's proposed retaliation allegations would fail to state claims under Section 1983 upon which relief can be granted, allowing Plaintiff to amend his complaint to assert such retaliation claims would be futile. Consequently, Plaintiff's first motion to amend (Doc. No. 5) will be denied.

In his second motion to amend (Doc. No. 6), Plaintiff asserts that he has not been credited with all of the pre-trial jail credits to which he is entitled. According to Plaintiff, with the correct credits applied, the "expiration date" of Plaintiff's sentence "would be right now approximately

June 2020 and my sentence would expire approximately Nov. 2019 next year." (*Id*. at 3). Plaintiff asks for the credits to be applied or for an award of damages against TDOC individuals. (*Id*. at 5).

The law is well established that "habeas corpus is the exclusive remedy for a state prisoner who challenges **the fact or duration of his confinement** . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994)(citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973))(emphasis added). A Section 1983 claim challenging confinement must be dismissed even where a plaintiff seeks only injunctive or monetary relief. *Heck*, 512 U.S. at 489-90 (claim for damages is not cognizable); *Preiser*, 411 U.S. at 488-90 (claim for injunctive relief is only cognizable under 28 U.S.C. § 2254). Additionally, a state prisoner does not state a cognizable claim under Section 1983 where a ruling on his claim would imply the invalidity of his conviction and/or confinement, unless and until the conviction has been favorably terminated, *i.e.*, reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U .S. at 486-87; *Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001). The United States Supreme Court extended *Heck* to bar Section 1983 actions that do not directly challenge confinement, but instead challenge the procedures that imply unlawful confinement. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Here, any relief to which Plaintiff might be entitled under Section 1983 with regard to his proposed claims concerning his sentence computation would be predicated on an affirmative showing that his sentence was, in fact, computed improperly. Under *Heck*, Plaintiff cannot seek such relief until and unless a federal or state court resolves the sentence computation issue in Plaintiff's favor. Because Plaintiff's concerns regarding the constitutionality of his continued confinement must be brought in a petition for writ of habeas corpus, permitting Plaintiff to amend

his civil rights complaint to allege such claims would be futile. Consequently, Plaintiff's second motion to amend (Doc. No. 6) will be denied.

The Court will screen the original complaint, as informed by Plaintiff's third letter to the Court (Doc. No. 8), pursuant to the PLRA, 28 U.S.C. §§ 1915(e)(2) and 1915A. Going forward, however, Plaintiff is advised that he cannot litigate this action or any action in this Court by way of notices or letters to the Court. Even though Plaintiff is proceeding pro se and the Court will take into consideration his pro se status when evaluating pleadings and pending motions, Plaintiff still is required to comply with the rules governing this case. These rules exist to ensure fairness to all parties. If Plaintiff wishes for the court to consider arguments and evidence, he must raise them by way of timely and properly filed motions.

## III.    PLRA Screening Standard

Having determined that Plaintiff, who has accumulated at least three strikes under 28 U.S.C. § 1915(g), successfully has demonstrated that he is under imminent danger of serious physical harm, the Court will now screen Plaintiff's pro se complaint pursuant to the PLRA.

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

A court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## IV.    Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."   To state a claim under Section 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009)(quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## V.    Alleged Facts

In addition to the allegations concerning the lack of medical treatment, *see Section 1 supra*, the complaint alleges that Plaintiff is eligible for transfer to the annex and has been recommended by the Warden for transfer but certain Defendants intentionally are preventing his transfer.  (Doc. No. 1 at 21-22, Doc. No. 8 at 2).  According to Plaintiff, inmates housed in the annex are eligible for work release programs.  (Doc. No. 1 at 22).  The complaint also alleges that Plaintiff would like to be moved to another prison but the classification supervisor and counselor refuse to assist Plaintiff in seeking a transfer to another prison.  (Doc. No. 8 at 2).  Finally, the complaint alleges that guards kept Plaintiff at "site one overnight on 3/19/18" instead of site two.  (*Id.*)

## VI.    Analysis

### A.    Claims based on Plaintiff's failure to be transferred to the annex or another prison

The complaint alleges that Plaintiff's rights are being violated because Defendants refuse to transfer him to the annex or to another prison. The complaint also alleges that, on one occasion, Plaintiff was housed overnight in "site one" instead of "site two."  However, inmates have no

constitutional right to be confined in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). It follows, then, that inmates have no constitutional right to be confined to a particular part of a prison. Thus, the complaint fails to state Section 1983 claims upon which relief can be granted against any Defendant based on his or her failure to transfer Plaintiff because Plaintiff has no constitutional right to choose his site of imprisonment.

Plaintiff apparently seeks, at least in part, to be transferred to the annex because inmates housed there are eligible for work release programs. However, prisoners have no constitutionally cognizable right to participate in rehabilitative or educational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Kenner v. Martin*, 648 F.2d 1080, 1081 (6th Cir. 1981) (per curiam); *Carter v. Corrs. Corp. of Am.*, No. 98-6336, 1999 WL 427352, at *1 (6th Cir. June 15, 1999). Thus, as to these allegations, the complaint fails to state a Section 1983 claim upon which relief can be granted, and this claim must be dismissed.

### B.     Denial of medical care claims

The complaint alleges that Defendants have refused to give him access to any treatment for several medical conditions, including COPD, lung disease, asthma, hypertension, epilepsy, nerve pain in his feet, an unspecified eye disorder, and blood in his stool. (Doc. No. 1 at 8-9). The complaint names as Defendants TDOC, Warden Settles, TDOC Commissioner Parker, Nurses Darrius and Auston, BCCX Prison Facility, BCCX Sergeant Yearwood, Aldridge, Burton, City of Nashville, and Dr. Dillion.

### 1.     Defendants Yearwood, Parker, Aldridge, and Burton

A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982). Other than being listed as Defendants on pages five and six of the complaint, Yearwood, Parker, Aldridge, and Burton are not mentioned in the narrative of the complaint. (*See* Doc. No. 1 at 8-9). Because Plaintiff does not allege the personal involvement of Yearwood, Parker, Aldridge, or Burton in the events set forth in the complaint, Plaintiff has not established a basis for imposing individual liability on these Defendants. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

To the extent that Plaintiff seeks to impose liability on these Defendants because of their supervisory positions, supervisory officials, who are aware of the unconstitutional conduct of their subordinates but fail to act, generally cannot be held liable in their individual capacities. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Because the complaint does not allege that any of these Defendants were directly

responsible for any of the alleged violations of Plaintiff's rights, the claims against Yearwood, Parker, Aldridge, and Burton must be dismissed.

## 2. BCCX Prison Facility and TDOC

Next, the complaint names the "BCCX Prison Facility" as a Defendant to this action. (Doc. No. 1 at 2). However, the Bledsoe County Correctional Complex is a building and not a "person" or legal entity that can be sued under 42 U.S.C. § 1983. *Cf. Fuller v. Cocran*, No. 1:05-CV-76, 2005 WL 1802415, at *3 (E.D. Tenn. July 27, 2005) (dismissing Section 1983 claims against the Bradley County Justice Center on the same basis); *Seals v. Grainger County Jail*, No. 3:04CV606, 2005 WL 1076326, at *1 (E.D. Tenn. May 6, 2005) ("The *Grainger County Jail*, however, is not a suable entity within the meaning of § 1983.").

To the extent the prison is sued in its official capacity because it is a state prison operated by TDOC, the prison is immune from suit. The Eleventh Amendment to the United States Constitution bars Section 1983 claims against a State or any arm of a State government. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989). A suit against the facility is in reality a suit against TDOC itself. TDOC, which Plaintiff also names as a Defendant, is considered part of the State of Tennessee for purposes of federal civil rights claims and therefore is not a suable entity under Section 1983, either for damages or injunctive relief. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). Thus, Plaintiff's Section 1983 claims against the BCCX Prison Facility fail to state claims upon which relief can be granted and, consequently, must be dismissed. Plaintiff's claims against TDOC must be dismissed because TDOC is immune from suit.

### 3.      City of Nashville

Municipalities are not subject to liability for the deprivation of civil rights under the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y*., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipalities may be liable under Section 1983 for deprivations of civil rights when the deprivation resulted from the "execution of a policy or custom" of the municipality. *Id.* at 694, 98 S. Ct. 2018. "[A] plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury." *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). "A 'custom' for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty., Tenn*., 103 F.3d 495, 507 (6th Cir.1996) (quoting *Monell*, 436 U.S. at 691, 98 S. Ct. 2018); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citations omitted).

Once a custom is identified, a plaintiff must "show that the municipal action was taken with the requisite degree of culpability." *Bd. of Cnty. Comm'rs*, 520 U.S. at 404, 117 S. Ct. 1382. "The plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id*. The municipality must have "intentionally" deprived the plaintiff of a federally protected right. *Id*. at 405, 117 S .Ct. 1382. Finally, the "plaintiff must also show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Claiborne Cnty*., 103 F.3d at 508 (citation omitted).

Here, the complaint fails to allege that Plaintiff's injuries were caused by action taken pursuant to a City of Nashville official policy or custom, which is required for Plaintiff to state a claim upon which relief can be granted. *See Thomas*, 55 Fed. Appx at 749 (citing *Monell*, 436 U.S. 658, 691). Furthermore, the complaint does not tie the City of Nashville to any of the allegations for which Plaintiff seeks relief. Consequently, the Court finds that the complaint fails to state a municipal liability claim against the City of Nashville.

### 4. Warden Settles

As to Warden Settles, the complaint alleges that he "is legally responsible for [Plaintiff's] welfare and all [his] problems [he's] having while in his custody." (Doc. No. 1 at 23). The complaint further alleges that Warden Settles "is also responsible for the unlawful acts [and] behavior of the TDOC staff[], employees, contractors named in this complaint . . . ." (*Id.*) These claims appear to be based solely on Settles's role as Warden; Plaintiff does not allege that the Warden had direct participation in health care decisions regarding any particular inmate, including Plaintiff. A Section 1983 plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller*, 408 F.3d at 827 n.3, and Plaintiff has failed to do so with respect to Warden Settles.

To the extent that Plaintiff is attempting to hold the Warden liable for the conduct of his subordinates, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at

least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that the Warden encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it. Neither does the complaint allege that Warden "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of a subordinate. *Id.* Simply, there are no allegations in the complaint connecting Warden to Plaintiff's health care in any way other than the fact that he is the warden of the facility where Plaintiff is incarcerated. Consequently, the complaint fails to state Section 1983 claims upon which relief can be granted as to Defendant Warden Settles. These claims will be dismissed.

### 5. Dr. f/n/u Dillion and Nurses Darrius and Auston

The complaint alleges that the remaining Defendants have denied and continue to deny Plaintiff medical treatment for COPD, lung disease, asthma, hypertension, epilepsy, nerve pain in his feet, and an unspecified eye problem. The complaint also alleges that Defendants have denied Plaintiff appropriate medical treatment for blood in his stool.

Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical

need that was "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

For purposes of the required PLRA screening, the Court that the medical conditions about which Plaintiff complains, including his allegations of constant pain and ceasing to breathe while sleeping due to his COPD, constitute sufficiently serious medical needs. *See Rouster*, 749 F.3d at 446. As to Dr. Dillion, Darrius, and Auston's state of mind, the complaint alleges that these Defendants "know about [his] conditions[,] infections[,] ect [sic] and know[] what can happen as the conditions get worse without treatment and proper treatment . . . ." (Doc. No. 1 at 10, 14-15). According to Plaintiff, these Defendants "are intentionally ignoring [his] needs for care . . . ." (*Id.*) The complaint further alleges that these Defendants discontinued Plaintiff's "chronic care," which the Court understands to be ongoing care for Plaintiff's chronic condition or conditions, for invalid and unlawful reasons. (*Id.* at 11-16). The Court finds that these facts as alleged by Plaintiff give rise to an inference of deliberate indifference on the part of these Defendants except as to Plaintiff's allegations concerning blood in his stool. Because Plaintiff states in his complaint that Defendants "misdiagnosed" Plaintiff with hemorrhoids, Plaintiff's allegations concerning Defendants' denial of medical care for the blood in Plaintiff's stool reflect a dispute over the adequacy of treatment or a difference of opinion regarding diagnosis or treatment, neither of which rises to the level of an Eighth Amendment violation. *Westlake,* 537 F.3d at 860 n.5.

Consequently, the Court finds that the complaint sets forth non-frivolous Eighth Amendment claims under Section 1983 against Dr. Dillion and nurses Darrius and Auston in their individual capacities based on the denial of medical treatment for Plaintiff's serious medical needs.

## VII.    Conclusion

In conclusion, Plaintiff, who has accumulated at least three strikes under 28 U.S.C. § 1915(g),  successfully has demonstrated that he is under imminent danger of serious physical harm; thus, Plaintiff will be permitted to seek pauper status in this action.  The Court construes Plaintiff's

letters to the Court (Doc. Nos. 5 and 6) as motions to amend the complaint, which the Court will deny.

Having screened the complaint pursuant to the PRLA, the Court finds that the complaint states colorable Eighth Amendment claims under Section 1983 against Dr. Dillion and nurses Darrius and Auston in their individual capacities based on the denial of medical treatment for Plaintiff's serious medical needs. These claims will proceed for further development. However, Plaintiff's remaining claims are subject to dismissal for failure to state a claim for which relief may be granted. 28 U.S.C. § 1915A. These claims and defendants, therefore, will be dismissed. 28 U.S.C. § 1915(e)(2).

An appropriate Order will be entered.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE